UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

WILLIAM J. POPPE,                          )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )        No.  2:16 CV 90 JMB
                                           )
                                           )
NANCY A. BERRYHILL,[1]                      )
Acting Commissioner of Social Security,    )
                                           )
                    Defendant.             )

## MEMORANDUM AND ORDER[2]

Plaintiff William J. Poppe ("Plaintiff") appeals the decision of the Acting Commissioner

of Social Security ("Defendant") denying his applications for disability benefits under Title II of

the Social Security Act,  see 42 U.S.C. §§ 401 et seq., and supplemental security income under

Title XVI, see 42 U.S.C. §§ 1381 et seq.  Substantial evidence supports the Acting

Commissioner's decision, and therefore it is affirmed.  See 42 U.S.C. § 405(g).

## I.    Procedural History & Summary of Memorandum Decision

On January 9, 2014, Plaintiff filed applications for disability benefits, arguing that his

disability began on August 20, 2012, as a result of depression, hypertension, degenerative disc

disease, migraines, fibromyalgia, memory loss, neck and back pain, numbness and tingling in his

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] This case is before the undersigned for judicial review pursuant to 42 U.S.C. § 405(g), with the consent of the parties under 28 U.S.C. § 636(c).

extremities, and nausea.[3]  (Tr. 486-93)  On February 14, 2014, Plaintiff's claims were denied

upon initial consideration.  (Tr. 423-27)  Plaintiff then requested a hearing before an

Administrative Law Judge ("ALJ").  Plaintiff appeared at the hearing (with counsel) on August

27, 2015, and testified concerning the nature of his disability, his functional limitations, and his

past work.  (Tr. 345-68)  The ALJ also heard testimony on that date from Bob Hammond, a

vocational expert ("VE").  (Tr. 369-73, 563-64)  The VE opined as to Plaintiff's ability to secure

other work in the national economy, based upon Plaintiff's functional limitations, age, and

education.  (Id.)  After taking Plaintiff's testimony, considering the VE's testimony, and

reviewing the rest of the evidence of record, the ALJ issued a decision on November 17, 2015,

finding that Plaintiff was not disabled, and therefore denying benefits.  (Tr. 14-24)

Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social

Security Administration ("SSA").  (Tr. 1-6)  On November 30, 2016, the Appeals Council denied

review of Plaintiff's claims, making the November 2015 decision of the ALJ the final decision of

the Acting Commissioner.  Plaintiff has therefore exhausted his administrative remedies, and his

appeal is properly before this Court.  See 42 U.S.C. § 405(g).

In his brief to this Court, Plaintiff raises one issue, the ALJ's Residual Function Capacity

determination is not supported by substantial evidence.  Plaintiff argues that the ALJ failed to

give controlling weight to his treating physician Dr. Wendell Nickerson's opinions, and

challenges the ALJ's adverse credibility determination.  The Acting Commissioner filed a

---

[3] Plaintiff sought disability benefits on a prior occasion.  On August 3, 2010, he filed an
application for alleged disabilities beginning on April 17, 2010.  An ALJ denied Plaintiff's prior
application for disability insurance benefits on August 20, 2012.  (Tr. 375)  In this case, the ALJ
accepted the SSA's previous finding that Plaintiff was not under a disability through August 20,
2012, and considered whether Plaintiff was disabled as of August 21, 2012, the date after the
final denial of Plaintiff's previous claims.  (Tr. 14)

detailed brief in opposition contending that the ALJ's decision is based on substantial evidence.

As explained below, the Court has considered the entire record in this matter. Because the decision of the Acting Commissioner is supported by substantial evidence, it will be affirmed.

## II.  The Hearing Before the ALJ

The ALJ conducted a hearing on August 27, 2015. Plaintiff was present with an attorney and testified at the hearing. The VE also testified at the hearing. (Tr. 345-74)

### A.  Plaintiff's Testimony

Plaintiff began his testimony by noting that he is unable to drive because he takes time released Morphine and Hydrocodone. (Tr. 352) Plaintiff is a high school graduate. Plaintiff's son helps with his bills, and he receives food stamps. (Tr. 353) Plaintiff testified that he last worked in 2010 as a long haul truck driver. Plaintiff's work as a truck driver required him to drive on the road five days a week. (Tr. 369) Plaintiff has been disabled since August 2012 because of his continuous pain caused by migraine headaches and fibromyalgia. (Tr. 353-55)

Plaintiff testified that he started experiencing migraine headaches as a child and has been on medications for years. (Tr. 355-56) Plaintiff experiences migraine headaches at least three times a month, each lasting twenty-four hours. (Tr. 367) A neurologist diagnosed Plaintiff with fibromyalgia in 2004, and he has been treated with medications. (Tr. 356) Plaintiff testified that he experiences pain across his extremities every day and has had four strokes. (Tr. 357, 359) Plaintiff testified that he has degenerative disc arthritis in his neck and arthritis in his back, and he takes medications for these conditions. (Tr. 358-59) Plaintiff has an enlarged heart and has been wearing a halter monitor for three months. (Tr. 361) Plaintiff takes a fifteen to thirty minute nap once or twice a day because of his fatigue. (Tr. 365-66)

Plaintiff testified that he can only stand for five to ten minutes. (Tr. 357) Plaintiff can walk a block before he needs to take a break. (Tr. 358) Plaintiff uses crutches. (Tr. 367)

Plaintiff testified that he experiences swelling in his feet every three to four weeks lasting for three to four days. (Tr. 363) Plaintiff takes medication and elevates his feet in a recliner for most of the day. (Tr. 363-64)

## B. The VE's Testimony

The VE testified regarding Plaintiff's work history and his current ability to work.

The ALJ asked the VE a series of hypothetical questions to determine whether someone Plaintiff's age, education, work experience, and specific functional limitations would be able to find a job in the local or national economy. (Tr. 370) The VE responded that such a hypothetical person would be able to perform the light job duties of a cashier II, a housekeeper/maid, and an extrusion press operator. (Tr. 371) The ALJ next asked whether an inability to sit, stand, and walk for a total of eight hours a workday and the need to lie down during the workday would preclude employment. (Tr. 372) The VE advised that such limitations would preclude work. The ALJ further asked whether the need to take unscheduled fifteen minute breaks or to be off task for at least 15 percent of the workday would preclude employment. The VE indicated that such individual would not be able to maintain employment. (Tr. 372) Last, the ALJ asked whether the need to be absent or leave work early at least two times a month would preclude employment. The VE advised that the inability to maintain a normal work schedule would preclude employment. (Tr. 373)

## III. The ALJ's Decision

In a decision dated November 17, 2015, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (Tr. 14-24) The ALJ determined that Plaintiff had

severe impairments of cervical degenerative disc disease, fibromyalgia, osteoarthritis, and obstructive sleep apnea; and non-severe impairments of strokes, cardiac impairment, hypertension, depression, obesity, and migraines. (Tr. 17-18) The ALJ determined that Plaintiff had a residual functional capacity ("RFC") to perform light work with the following modifications: he could not climb ladders, ropes, and scaffolds; he could occasionally climb stairs and ramps; he could occasionally stoop, kneel, crawl, and crouch; and he must avoid hazards such as unprotected heights and moving and dangerous machinery and concentrated exposure to pulmonary irritants such as dust, fumes, and gases. (Tr. 17)

The ALJ concluded that Plaintiff could not return to his past relevant work as a truck driver. (Tr. 22) Based on hypothetical questions posed to the VE, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act because someone with his age, education and functional limitations could perform other work that existed in substantial numbers in the national economy. (Tr. 23)

The ALJ's decision is discussed in greater detail below in the context of the issues Plaintiff has raised in this matter.

## IV.   Standard of Review and Legal Framework

"To be eligible for … benefits, [Plaintiff] must prove that [he] is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A plaintiff will be found to have a disability "only if [his]

physical or mental impairment or impairments are of such severity that [he] is not only unable to do [her] previous work but cannot, considering [his] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B). See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, 20 C.F.R § 404.1520, "[t]he ALJ follows 'the familiar five-step process' to determine whether an individual is disabled…. The ALJ consider[s] whether: (1) the claimant was employed; (2) [he] was severely impaired; (3) [his] impairment was, or was comparable to, a listed impairment; (4) [he] could perform past relevant work; and if not, (5) whether [he] could perform any other kind of work." Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011) (quoting Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010)). See also Bowen, 482 U.S. at 140-42 (explaining the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district

court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## V.   **Medical Records**

The administrative record before this Court includes medical records indicating that Plaintiff received health treatment from August 13, 2012, through November 13, 2015. The Court has reviewed the entire record. The following is a summary of pertinent portions of the medical records relevant to the matters at issue in this case.

A.    __Blessing Physician Services__  (Tr. 639-85, 735-52, 757-82)

Between May 5, 2014, and November 12, 2015, a number of doctors on staff at Blessing Physician Services treated Plaintiff.

On May 5, 2014, Plaintiff presented as a new patient and reported having an unstable angina and chest pain.  Physical examination showed Plaintiff to be in no acute distress, his muscle strength and tone to be normal, and no edema.  In a follow-up visit on June 19, 2014, Plaintiff reported increased chest pain and shortness of breath.  Physical examination showed Plaintiff to be in no acute distress and no edema.  Dr. Syed Samee encouraged Plaintiff to lose weight by diet and exercise.

On September 25, 2014, Plaintiff reported doing well but that he was fatigued and having symptoms of obstructive sleep apnea.  Plaintiff returned on December 10, 2014, and reported a history of strokes and prior exposure to chemicals while working as a truck driver.  Physical examination showed Plaintiff to be in no acute distress and oriented to person, place, and time, with normal affect and normal mood.  Dr. Nanjappa Somanna ordered a test to rule out sleep apnea and encouraged Plaintiff to lose weight with dieting and exercise.

In follow-up treatment on January 16, 2015, Dr. Somanna advised Plaintiff to lose weight.  Plaintiff returned on February 25, 2015, for follow-up.  Plaintiff reported the intensity of his migraine headaches had been reduced.  Dr. Somanna diagnosed Plaintiff with mild obstructive sleep apnea and noted that weight loss would help Plaintiff.  Dr. Somanna advised Plaintiff to lose weight with dieting and exercise.

On April 9, 2015, Plaintiff reported still experiencing chest pain but the pain did not happen frequently and several weeks passed sometimes without any symptoms.  Plaintiff reported no swelling in his legs or feet.  Physical examination showed Plaintiff not to be in acute

distress and having no edema. Dr. Samee noted that Plaintiff's exercise tolerance was excellent based on a stress echocardiogram. Plaintiff returned on May 12, 2015, reporting a history of hyperilipidemia, hypertension, and mild to moderate obesity with no other active problems. Physical examination showed Plaintiff not to be in acute distress and having no edema. Dr. Samee encouraged Plaintiff to lose about ten percent of his body weight and continue with a healthy and active lifestyle.

On July 20, 2015, Plaintiff reported having constant pain all over his body and having the diagnosis of fibromyalgia. Nurse practitioner Rachana Adhkari observed Plaintiff to be in no acute distress with no edema and a normal gait. In follow up on August 4, 2015, Plaintiff returned as a transfer patient from Dr. Nickerson and to establish care. Plaintiff reported increased arthritis and fibromyalgia pain and migraine headaches. Dr. Ofuwasseun Odumosu prescribed extended release morphine sulfate, changed Plaintiff's medication regimen, and requested a consultation at a pain clinic. Dr. Odumosu encouraged Plaintiff to exercise regularly and diet.

On August 14, 2015, Dr. Luis Zayas evaluated Plaintiff's history of chronic headaches. Plaintiff reported having fifteen to twenty headaches each month, lasting more than four hours and triggered by chocolate and weather changes. Dr. Zayas observed Plaintiff not to be in acute distress with no edema and a normal gait. Dr. Zayas directed Plaintiff to begin regular exercise, and gradually work up to three sessions of thirty minutes of exercise each week. Dr. Zayas determined that Plaintiff's "[c]hronic migraines superimposed to medication overuse headaches (narcotics). His main problem is medication overuse headaches. He has a full criteria for medication overuse headache/migraine…." (Tr. 747) Dr. Zayas decided that treatment should be discontinuance of those medications, including detoxification/weaned treatment of opioids

and monitoring for withdrawal symptoms, and this treatment is a difficult process requiring expertise from a multidisciplinary team. Dr. Zayas recommended tapering down all of Plaintiff's narcotic medications and explained the importance of aerobic exercises at least three to four times a week and walking activities as tolerated. Examination showed no signs of inflammatory or rheumatological conditions.

During follow up treatment on October 5, 2015, Plaintiff reported being scheduled at the pain clinic and being fatigued. Physical examination showed Plaintiff to be in no acute distress. Plaintiff had a normal gait and normal strength. Dr. Odumosu encouraged Plaintiff to exercise. Dr. Odumosu noted that a review of Plaintiff's "record shows that he has had 'fibromyalgia' in his record for many years but has probably not been formally assessed." (Tr. 763) During treatment on October 27, 2015, Plaintiff reported walking and sitting made his pain more tolerable. Plaintiff returned on October 30, 2015, and complained of chronic pain all over his body caused by his disc arthritis and fibromyalgia. Plaintiff reported that while he was helping move cattle into a pin, he felt very weak. Plaintiff reported walking a mile every day.

On November 12, 2015, Plaintiff reported continued neck pain and taking morphine helped. Left shoulder examination showed a full range of motion but with pain. Dr. Carol Espejo administered trigger point injections.

**B.** **Blessing Hospital Emergency Room and Pain Management** (Tr. 580-93, 686-98, 784-96)

Between October 10, 2012 and November 5, 2015, Plaintiff received treatment on several occasions in the emergency room at Blessing Hospital. On October 19 and 27 and November 5, 2015, Plaintiff received pain management treatment at Blessing Hospital.

On October 10, 2012, Plaintiff sought treatment for a facial laceration sustained after using a chain saw to cut firewood. On December 2 and August 18, 2013, Plaintiff complained of

a migraine headaches.

On May 15, 2014, Plaintiff presented in the emergency room complaining of a migraine headache with his pain medications not working. Physical examination showed Plaintiff not to be in acute distress and no rigidity in his neck. During a May 16, 2014, echocardiogram, Plaintiff exercised for a total of nine minutes, and tolerated exercise well.

After January 12 and 23, 2015, sleep studies revealed mild obstructive sleep apnea, Plaintiff started on a CPAP.

On October 19, 2015, Dr. Joseph Meyer evaluated Plaintiff's chronic pain, fibromyalgia, and chronic opioid use. Dr. Meyer noted that Plaintiff was able to sit comfortably throughout the fifty to sixty minute evaluation without having to reposition or stand due to his pain. Dr. Meyer recommended that Plaintiff start a ten to fifteen minute walking regimen twice a day at a brisk pace. In a social work evaluation on November 5, 2015, Plaintiff reported doing his own household chores, trying to get out and walk, and considering water therapy.

**C.** **Calvary Medical Center – Dr. Wendell Nickerson, D.O.** (Tr. 595-619, 621-24, 634-37, 726-27, 754-56)

Between August 13, 2012, and November 13, 2015, Dr. Wendell Nickerson, D.O. of Calvary Medical Center, treated Plaintiff.

On August 13, 2012, Plaintiff reported neck discomfort and requested a steroid shot to treat his fibromyalgia. Plaintiff returned on August 20, 2012, complaining of neck discomfort and a rash all over his body "thinking he got into something after brush hogging." (Tr. 612) During physical examination, Dr. Nickerson noted that Plaintiff had a rash "on exposed arms and trunk where shirt was off when son was 'brush hogging.'" (Id.) Plaintiff returned on October 1, 2012, complaining of a four-day migraine headache. Dr. Nickerson prescribed medications. On October 26, 2012, Dr. Nickerson administered a steroid shot and prescribed medications.

On January 3, 2013, Plaintiff reported right hand numbness and weakness in his right shoulder. Plaintiff returned on February 28, 2013, complaining of neck discomfort. On April 15, 2013, Dr. Nickerson administered a steroid shot and refilled Plaintiff's medications. Plaintiff returned on June 17, 2013, complaining of neck and back discomfort after falling.

On August 8, 2013, Dr. Nickerson administered a steroid shot to reduce Plaintiff's fibromyalgia pain. Plaintiff returned on August 14, 2013, complaining of neck pain resulting in headaches. On August 21, 2013, Plaintiff reported neck and back discomfort after falling off a truck. On October 7, 2013, Dr. Nickerson administered a steroid shot for joint pain.

On January 15, 2014, Dr. Nickerson treated Plaintiff's neck discomfort by administering a steroid shot and prescribing medications. Plaintiff returned on February 13, 2014, complaining of back and neck pain and a five-day migraine headache. Dr. Nickerson continued Plaintiff's medication regimen.

In a March 14, 2014, Medical Source Statement of Ability to Do Work-Related Activities (Physical) ("MSS"), Dr. Nickerson opined that Plaintiff could sit about two hours and stand/walk less than two hours during an eight-hour workday. Dr. Nickerson further opined that Plaintiff must have the opportunity to shift at will from sitting or standing/walking and to lie down at unpredictable intervals a minimum of four times during the workday. In support, Dr. Nickerson cited to his examination findings of multiple fibromyalgia tender points with associated chronic fatigue syndrome. Dr. Nickerson opined that Plaintiff must avoid all exposure to fumes, odors, dusts, and gases and solvents/cleaners. Dr. Nickerson also opined that Plaintiff would be off task 25% or more during the workday and would need to take a minimum of four, fifteen minute unscheduled breaks during the workday.

In follow-up on March 27, 2014, Dr. Nickerson treated Plaintiff's chronic fatigue, pain

and fibromyalgia. Plaintiff reported having good results on his medications. Plaintiff returned on April 17 and July 29, 2014, and requested steroid shots. Plaintiff returned on August 20, 2014, complaining of neck pain after falling. Dr. Nickerson continued Plaintiff's medication regimen. On September 29, 2014, Dr. Nickerson administered a steroid injection.

On November 19, 2014, Plaintiff asked for a steroid shot and reported having a lot of pain. Examination only showed normal weight gain.

On February 10, 2015, Plaintiff reported running out of hydrocodone and experiencing increased pain. In follow-up on February 26, 2015, Plaintiff reported back and neck discomfort. On March 25, 2015, Plaintiff returned for a medication refill and reported swelling in his feet. Dr. Nickerson diagnosed Plaintiff with peripheral edema. In follow-up treatment on June 24, 2015, Plaintiff complained of back discomfort and requested a hydrocodone refill.

On November 13, 2015, Plaintiff reported he had no migraine headaches for a month and not returning to pain clinic because the treatment increased his pain. Plaintiff explained that he cannot work nor have a productive life. Plaintiff reported being "able to do his own physical needs (food, personal hygiene, maintenance of his home, and drive) but cannot hold down a job due to his inability to stay at a task for over 30 minutes, and inability to stand or sit in one location due to his fibromyalgia pain for any length of time. His physical stamina causes him to have to rest frequently during the day." (Tr. 755) Dr. Nickerson explained that he was no longer providing chronic pain management for Plaintiff and expressed concern about Plaintiff's mental status.

### D.     __Quincy Medical Group – Dr. Douglas Sullivant__ (Tr. 574-77,669-85)

Between September 18, 2013, and January 5, 2015, Dr. Douglas Sullivant, a neurologist, treated Plaintiff four times at Quincy Medical Group.

During treatment on September 18, 2013, Plaintiff reported last being treated for headaches in 2007. Plaintiff reported having back and neck pain and doing little exercise. Examination of his neck showed a full range of motion, and fair flexion and rotation. Examination of his extremities showed no edema. Dr. Sullivant opined that Plaintiff's cervical degenerative disc disease was triggering his occipital headaches and recommended neuroimaging. Dr. Sullivant encouraged Plaintiff to exercise.

On May 19, 2014, Plaintiff reported his fibromyalgia had not improved and Dr. Nickerson treated his fibromyalgia with vitamin injections and steroid shots. Plaintiff also reported that his headaches had become more severe, occurring three to four times a week. Dr. Sullivant observed that Plaintiff was in no apparent distress. Examination showed Plaintiff had 5/5 strength bilaterally, and his gait was within normal limits. Dr. Sullivant opined that Plaintiff's regular use of hydrocodone for a long period of time with diminishing efficacy likely contributed to his rebound headaches and back pain. Dr. Sullivant suggested an incremental taper and changing his medication regimen. Dr. Sullivant also opined that Plaintiff's cervical degenerative joint disease was triggering his neck pain.

In follow-up on September 4, 2014, Plaintiff reported continued headaches and back pain. Examination showed no apparent distress, good insight and judgment, 5/5 strength bilaterally, gait within normal limits, and a full range of motion in his neck. Dr. Sullivant did not observe any objective motor weakness, and opined that Plaintiff's deconditioning and inactivity contributed to his back pain.

On January 5, 2015, Plaintiff returned complaining of headaches and back pain. Dr. Sullivant observed Plaintiff not to be in apparent distress with good insight and judgment and 5/5 strength bilaterally. Dr. Sullivant diagnosed Plaintiff with fibromyalgia and adjusted his

medications.

## VI.    Analysis of Issue Presented

In his brief to this Court, Plaintiff challenges the ALJ's RFC determination generally, and specifically focuses on the ALJ's adverse credibility determination and the ALJ's failure to accord more weight to the opinions of his treating physician, Dr. Wendell Nickerson.  The Court first addresses the ALJ's credibility analysis because that analysis is relevant to the larger question of whether the ALJ erred in failing to give greater weight to opinions of Dr. Nickerson.

### A.    The ALJ's Adverse Credibility Determination

Plaintiff contends that the ALJ erred in making an adverse credibility determination. Plaintiff contends that an ALJ may not discount his subjective complaints based on inconsistencies, when in fact, the ALJ is incorrect and the ALJ failed to cite specific reasons for his credibility determination.

In evaluating Plaintiff's subjective complaints, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (Tr. 19) Accordingly, the ALJ determined that Plaintiff was not fully credible because the objective medical record and Plaintiff's daily activities are inconsistent with his allegations regarding the severity of his impairments.  The Court has reviewed the ALJ's credibility determination in accordance with the applicable regulations and governing case law.  As explained below, the ALJ did not err in finding Plaintiff not entirely credible.

The Eighth Circuit has instructed that the ALJ is to consider the credibility of a plaintiff's subjective complaints in light of the factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th

Cir. 1984). See also 20 C.F.R. §§ 404.1529. 416.929. The factors identified in Polaski include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his symptoms; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of his medication; treatment and measures other than medication he has received; and any other factors concerning his impairment-related limitations. See Polaski, 739 F.2d at 1322; 20 C.F.R. §§ 404.1529. 416.929. An ALJ is not, however, required to specifically discuss each Polaski factor and how it relates to a plaintiff's credibility. See Partee v. Astrue, 638 F.3d 860, 965 (8th Cir. 2011) (stating that "[t]he ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting a [plaintiff's] subjective complaints") (internal quotation and citation omitted); Samons v. Astrue, 497 F.3d 813, 820 (8th Cir. 2007) (stating that "we have not required the ALJ's decision to include a discussion of how every Polaski factor relates to the [plaintiff's] credibility.").

The Court reviews the ALJ's credibility determination with deference and may not substitute its own judgment for that of the ALJ. "The ALJ is in a better position to evaluate credibility, and therefore we defer to her determinations as they are supported by sufficient reasons and substantial evidence on the record as a whole." Andrews v. Colvin, 791 F.3d 923, 929 (8th Cir. 2015). See also Gregg v. Barnhart, 354 F.3d 710, 713 (8th Cir, 2003) (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination"). In this case, the ALJ gave good reasons for discounting Plaintiff's credibility. Accordingly, the Court will defer to the ALJ in this regard.

Plaintiff contends that the ALJ failed to perform a proper credibility analysis because the ALJ found his daily activities to be inconsistent with his allegations of disability, especially

placing great weight on the fact that Plaintiff operated a brush hog and a chain saw. Plaintiff contends that the medical record shows that his son operated the brush hog,[4] not him. Regardless of who was actually operating the brush hog, Plaintiff or his son, Plaintiff was outside working on land when the accident occurred. On August 20, 2012, Dr. Nickerson treated Plaintiff for a rash he developed when his shirt was off while his son was brush hogging. August 20, 2012, is also Plaintiff's disability onset date. Plaintiff argues, therefore, that the brush hogging incident occurred before his onset date. The ALJ could reasonably consider Plaintiff's activity during this time. Plaintiff's rash could not have resulted from activity that occurred significantly before August 20, 2012; Dr. Nickerson treated Plaintiff just seven days earlier and there is no mention of a rash in those records. (See Tr. 612-13)

The close time proximity of the brush hog incident to his alleged onset date of disability supports the ALJ's finding that Plaintiff was not as limited as Dr. Nickerson opined. Moreover, two months later, Plaintiff injured himself cutting firewood with a chain saw, once again showing Plaintiff's physical condition had not deteriorated to point at which he could no longer work. Although Plaintiff contends that he operated a chain saw only once and injured himself, the fact that he operated a chain saw detracts from his credibility and is inconsistent with his allegations regarding the severity of his impairments. As explained below, the ALJ's adverse credibility determination is well-supported and justified.

A review of the ALJ's decision shows he partially discredited Plaintiff's subjective complaints based on his daily activities, because Plaintiff's daily activities are not consistent with the extent of Plaintiff's allegedly disabling impairments. The ALJ questioned Plaintiff at the

_____

[4] A review of the treatment note shows that Plaintiff reported having a rash "thinking he got into something after brush hogging," and during treatment, Dr. Nickerson noted that Plaintiff has a rash "on exposed arms and trunk where shirt was off when son was 'brush hogging.'" (Tr. 612)

administrative hearing regarding his daily activities, and in his written opinion found his described daily activities "contradicts a finding that [Plaintiff] is as limited as described by [Plaintiff]."  (Tr. 20)  At the hearing, Plaintiff indicated that his conditions affect his ability to walk.  Plaintiff never reported this problem during treatment, only during his hearing testimony.  During treatment, Plaintiff reported walking a mile every day, experiencing weakness after helping herd cattle, and sustaining an injury falling off the back of a truck.  Likewise, the ALJ noted that Plaintiff indicated in a function report that he has problems with activities such as dressing, and rests in a recliner most of the day, but Plaintiff also reported having the ability to do his own household chores.  See Kamman v. Colvin, 721 F.3d 945, 951-52 (8th Cir. 2015) (affirming ALJ's credibility finding based on discrepancies).  Thus, Plaintiff's daily activities can fairly be described as inconsistent with his subjective complaints that would prevent him from performing work, and they were properly considered in judging the credibility of his complaints.  See Pirtle v. Astrue, 479 F.3d 931, 935 (8th Cir. 2007) (affirming ALJ's credibility decision based, in part, on claimant's daily activities of driving a manual-transmission car, shopping, performing housework, fishing, attending church two to three times a week, caring for personal needs, and home-schooling her two children).  Substantial evidence supports the ALJ's finding that Plaintiff's daily activities are inconsistent with his allegations of disabling symptoms.  The undersigned finds therefore, that the ALJ properly considered Plaintiff's daily activities as another factor that weighed against the credibility of his subjective complaints.

Another factor to be considered is the lack of any restrictions on Plaintiff's daily activities, or functional or physical limitations placed on Plaintiff by any of his physicians.  See Moore v. Astrue, 572 F.3d 520, 525 (8th Cir. 2009) (holding that "[a] lack of functional restrictions is inconsistent with a disability claim); Samons, 497 F.3d at 820-21 (affirming

adverse credibility determination, in part, by absence of any functional limitations placed on claimant who described disabling back pain). The record indicates that Plaintiff's medical sources never placed any substantial, meaningful restrictions on Plaintiff. To the contrary, treating physicians repeatedly and consistently encouraged Plaintiff to exercise and to lose weight.

In support of his credibility findings, the ALJ also focused on the objective medical evidence and concluded that it did not support Plaintiff's allegations regarding the severity of his impairments. See Halverson, 600 F.3d at 932 (absence of objective medical evidence to support the complaints is a factor to be considered); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of her complaints). For instance, Plaintiff's medical records documented that Dr. Sullivant, a neurologist, opined that Plaintiff's cervical degenerative disc disease was triggering his occipital headaches, and Plaintiff's regular long-term use of hydrocodone likely contributed to his rebound headaches. During treatment on February 25, 2015, Plaintiff reported the intensity of his migraine headaches had reduced. The ALJ also noted that Plaintiff's ability to work as an over-the-road truck driver for many years to be inconsistent with his alleged frequency of debilitating headaches. The record shows that the ALJ adequately considered Plaintiff's treatment record. In doing so, the ALJ articulated the inconsistencies between the medical record and Plaintiff's subjective statements in his hearing testimony.

Based on the foregoing, the undersigned finds that there is substantial evidence in the record to support the ALJ's analysis of Plaintiff's credibility complaints, and the ALJ thoroughly discussed the objective findings of the treating doctors, and his daily activities, and

inconsistencies in the record, in support of his adverse credibility determination.  See Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016) (explaining that "[c]redibility determinations are the province of the ALJ" and the deference owed to such determinations); Gregg, 354 F.3d at 713 (holding that "[i]f an ALJ explicitly discredits the [plaintiff's] testimony and gives good reasons for doing so, [the reviewing court] will normally defer to the ALJ's credibility determination").  Accordingly, the undersigned concludes that substantial evidence in the record as a whole supports the ALJ's adverse credibility finding in this case.

### B. Treating Physician – Dr. Wendell Nickerson, D.O.

Plaintiff also argues that the ALJ erred by failing to give controlling weight to the opinions of his treating physician, Dr. Nickerson.

In his March 14, 2014, MSS, Dr. Nickerson opined that Plaintiff could sit about two hours and stand/walk less than two hours during an eight-hour workday.  Dr. Nickerson further opined that Plaintiff must have the opportunity to shift at will from sitting or standing/walking and to lie down at unpredictable intervals a minimum of four times during the workday.  Dr. Nickerson opined that these limitations were supported by Plaintiff's "complaints of fatigue and inability to do activities of daily living around the home without resting.  Exam findings of multiple fibromyalgia tender points correlate with associated chronic fatigue syndrome."  (Tr. 634)  Dr. Nickerson further opined that Plaintiff must avoid all exposure to fumes, odors, dusts, and gases and solvents/cleaners.  Dr. Nickerson also opined that Plaintiff would be off task 25% or more during the workday and would need to take a minimum of four, fifteen minute unscheduled breaks during the workday.

"A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Reece v. Colvin, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Yet such weight is neither inherent nor automatic and does not obviate the need to evaluate the record as a whole." Cline v. Colvin, 771 F.3d 1098, 1103 (8th Cir. 2014) (internal citations omitted). The Commissioner "'may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. (quoting Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012); see also Chesser v. Berryhill, 858 F.3d 1161, 1164-65 (8th Cir. 2017) (The Commissioner may assign "little weight" to a treating physician's opinion when it is either internally inconsistent or conclusory). If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. Doherty v. Colvin, 2014 WL 3530898, at *2 (W.D. Mo. July 16, 2014); 20 C.F.R. § 404.1527(d)(2)). Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. Id.

The ALJ afforded Dr. Nickerson's opinions little weight because "No examination revealed signs indicative of a need for [Plaintiff] to lie down at unpredictable intervals. Dr. Nickerson's own examinations failed to reveal signs indicative of his opinion. Finally, his opinion is inconsistent with the evidence that [Plaintiff] performed activities such as cutting wood with a chainsaw." (Tr. 22) In assigning little weight to Dr. Nickerson's opinions in the MSS, the ALJ reasonably concluded that the MSS was also inconsistent with the objective medical evidence. Cruze v. Chater, 85 F.3d 1320, 1325 (8th Cir. 1996) (treating source's

opinions assigned less weight when the "opinions have largely been inconsistent and are not fully supported by the objective medical evidence). Specifically, the ALJ found that "no examiner observed that [Plaintiff] was as limited by fibromyalgia as [Plaintiff] described. No examiner noted [Plaintiff] had signs of significant inactivity due to pain and fatigue as [Plaintiff] described such as muscle atrophy." (Tr. 20) Indeed, as reflected in his own treatment records, Dr. Nickerson never imposed any functional limitations or work restrictions on Plaintiff.

The ALJ explained his reasons for giving Dr. Nickerson's functional limitations in the MSS little weight as inconsistencies between the objective medical evidence and the MSS. First, the ALJ noted that the objective findings from physical examinations, including those performed by Dr. Nickerson, do not support the disabling limitations set forth in the MSS. Although Dr. Nickerson opined that Plaintiff's fatigue, arthritic pain, muscle weakness, and positive tender points support the limitations in the MSS, other treating doctors noted Plaintiff displayed full strength, normal muscle bulk and tone, and normal range of motion in his back, neck, extremities, and all joints. Moreover, during treatment in October 2015, Dr. Meyer noted that Plaintiff was able to sit comfortably throughout the fifty to sixty minute evaluation without having to reposition or stand due to his pain and recommended that Plaintiff start a walking regimen twice a day at a brisk pace. Notably, none of Plaintiff's numerous treating physicians ever placed any restrictions on Plaintiff's activities, but instead, encouraged him to exercise. See Hensley v. Barnhart, 352 F.3d 353, 356 (8th Cir. 2003) (finding no disability supported by the fact that no functional restrictions were placed on claimant's activities). Accordingly, the ALJ properly offered a sufficient basis to give Dr. Nickerson's opinions in the MSS little weight. See Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015) (finding error when the ALJ offered no basis to give an opinion non-substantial weight; "For example, the ALJ did not find the opinion

inconsistent with the record or another [of the physician's own] opinion[s]."); Choate v.

Barnhart, 457 F.3d 865, 870 (8th Cir. 2006) (ALJ permitted to disregard treating cardiologist's

conclusion that claimant was disabled; cardiologist failed to explain why claimant could not

perform light or sedentary work and treatment notes did not indicate that any of claimant's

doctors restricted his activities or advised him to avoid prolonged standing or sitting).  See also

Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001) (ALJ did not err in discounting treating

physician's MSS, where the ALJ found that the limitations detailed in the statement were never

mentioned in physician's numerous treatment records).

Although the ALJ did not address all of the non-controlling factors set forth in 20 C.F.R.

§§ 404.1527(c), 416.927(c), the ALJ is not required to cite specifically to the regulations but

need only clarify whether he discounted the opinion and why.  Kientzy v. Colvin, 2016 WL

4011322, at *8 (E.D. Mo. July 27, 2016).  In his decision, the ALJ outlined the treatment records

from Dr. Nickerson which did not support the functional limitations in Dr. Nickerson's MSS.

Additionally, the ALJ did not err in discounting Dr. Nickerson's opinions because they

appeared to rely on, at least in part, Plaintiff's self-reported symptoms.  An ALJ may give less

weight to a doctor's opinion that is based on a plaintiff's self-reported complaints, particularly

when the plaintiff is not credible.  See McCoy v. Astrue, 648 F.3d 605, 616-17 (8th Cir. 2011)

(ALJ may reject a medical opinion if it is "inconsistent with the record as a whole" or "based, at

least in part, on [the claimant's] self-reported symptoms" where the claimant is deemed not

credible.); Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007).

As to Plaintiff's allegation of error in regard to the ALJ failing to further develop the

record by submitting interrogatories to Dr. Nickerson, there is nothing in the regulations

requiring an ALJ to recontact a treating physician whose opinion was contradictory or unreliable.

Hacker v. Barnhart, 459 F.3d 934, 938 (8th Cir. 2006) ("The regulations provide that the ALJ should recontact a treating physician when the information the physician provides is inadequate for the ALJ to determine whether the applicant is actually disabled."). Here, the ALJ did not find Dr. Nickerson's records inadequate, unclear, or incomplete, but the ALJ discounted Dr. Nickerson's opinions in the MSS because they were inconsistent with other substantial evidence. Additionally, an ALJ is not required to obtain further medical evidence unless the evidence is insufficient for the ALJ to make a determination as to whether Plaintiff is disabled. See 20 C.F.R. § 404.1512; see Martise, 641 F.3d at 926-27 (ALJ fails in duty to develop medical record only if the medical records before him do not provide sufficient evidence for him to determine whether claimant is disabled). Here, substantial evidence establishes that the ALJ had sufficient evidence to determine whether Plaintiff is disabled. As such, the ALJ was not required to recontact Dr. Nickerson or any other doctor. See Tellez v. Barnhart, 403 F.3d 953, 956-57 (8th Cir. 2005) (holding that the ALJ was not required to obtain additional medical opinions where "there [was] no indication that the ALJ felt unable to make the assessment he did and his conclusion [was] supported by substantial evidence.").

The undersigned also finds that the medical record shows that Plaintiff has not required aggressive care and his providers have not recommended such care. Overall, the evidence shows that Plaintiff received routine and conservative health treatment with no physicians imposing any functional limitations or requiring Plaintiff to lie down at unpredictable intervals a minimum of four times during an eight-hour workday. The ALJ considered all of the evidence in the record to conclude that while Plaintiff suffered severe impairments, his resulting limitations were not as severe as indicated by Dr. Nickerson. Viewing the ALJ's opinion in light of the record as a whole, substantial evidence supports the ALJ's decision to assign little weight to Dr. Nickerson's

opinions in the MSS.[5]  See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (internal

inconsistency and conflict with other evidence on the record constitute good reasons to assign

lesser weight to a treating physician's opinion).  In sum, the Court finds the weight accorded to

Dr. Nickerson's opinions by the ALJ is supported by valid reasons and substantial evidence in

the record as a whole.

## C.       RFC

Plaintiff contends that the ALJ's RFC is not supported by substantial evidence.

A claimant's RFC is the most an individual can do despite the combined effects of his or

her credible limitations.  See 20 C.F.R. § 404.1545.  "The RFC 'is a function-by-function

assessment based upon all of the relevant evidence of an individual's ability to do work-related

activities.'"  Roberson v. Astrue, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996

WL 374184, at *3 (S.S.A. 1996)).  An ALJ's RFC finding is based on all of the record evidence,

the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment

records, and the medical opinion evidence.  See Wildman, 596 F.3d at 969; see also 20 C.F.R. §

404.1545; SSR 96-8p (listing factors to be considered when assessing a claimant's RFC,

including medical source statements, recorded observations, and "effects of symptoms … that

_____

[5] The undersigned also notes that there was no treatment note of a visit the day Dr. Nickerson
completed the MSS, and the MSS was only a series of check marks to assess Plaintiff's physical
limitations with little explanation of the findings.  A checklist format and conclusory opinions,
even of a treating physician, are of limited evidentiary value.  See Thomas v. Berryhill, 2018 WL
704215 (E.D. Mo. Feb. 5, 2018)(The ALJ properly accorded treating physician's assessments
little weight because "[t]hose assessments … consist of nothing more than vague conclusory
statements – checked boxes, circled answers, and brief fill-in-the-blank responses…. and provide
little to no elaboration, and so they possess 'little evidentiary value.'"); Wildman, 596 F.3d at
964; Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("The checklist format,
generally, and incompleteness of the [RFC] assessments limit their evidentiary value.").  Further,
the MSS appears to have been procured by, and submitted to, Plaintiff's counsel.  Significantly,
the MSS was inconsistent with Dr. Nickerson's treatment notes.

are reasonably attributed to a medically determinable impairment.").  An ALJ does not, however, fail in his duty to assess a claimant's RFC on a function-by-function basis merely because the ALJ does not address all areas regardless of whether a limitation is found.  Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003).  Instead, an ALJ who specifically addresses all areas in which he found a limitation but is silent as to those areas in which not limitation is found is believed to have implicitly found no limitation in the latter.  Id. at 567-68.  See also Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Based on the medical evidence, Plaintiff's credibility, and the opinion evidence of record, the ALJ determined that Plaintiff retained the RFC to perform a range of light work[6] with the following additional limitations/restrictions:  (1) Plaintiff cannot climb ladders, ropes, and scaffolds; (2) Plaintiff can occasionally climb stairs and ramps; (3) Plaintiff can occasionally stoop, kneel, crawl, and crouch; and (4) Plaintiff must avoid hazards such as unprotected heights and moving and dangerous machinery and concentrated exposure to pulmonary irritants such as dust, fumes, and gases.

The ALJ's RFC determination took into account all of Plaintiff's impairments/ symptoms, to the extent they were credible and consistent with the objective medical evidence and other evidence.[7]  As previously discussed, the ALJ properly discounted Plaintiff's subjective

---

[6] "According to the regulations, 'light work' is generally characterized as (1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding, and turning objects."  Holley v. Massanari, 253 F.3d 1088, 1091 (8th Cir. 2001) (citing 20 C.F.R. § 404.1567(b)).

[7] The undersigned notes that in determining that Plaintiff has the RFC to perform light work, the ALJ did not completely disregard Dr. Nickerson's opinions, as the ALJ found Plaintiff limited to light exertional work activity with additional environmental limitations.  Instead, the ALJ

complaints. Plaintiff's activities of daily activities were generally consistent with the RFC, as was the available medical evidence. After discussing the medical opinion evidence, the ALJ concluded that his RFC assessment was supported by the medical evidence of record considered as a whole, and Plaintiff's activities of daily living. Thus, if all the relevant evidence of record is considered, as the ALJ was obligated to do, the ALJ's RFC is supported by substantial evidence in the record as a whole. Plaintiff's argument to the contrary is without merit.

## VII. <u>Conclusion</u>

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole. <u>See</u> <u>Finch</u>, 547 F.3d at 935. Similarly, the Court cannot say that the ALJ's determinations in this regard fall outside the available "zone of choice," defined by the record in this case. <u>See</u> <u>Buckner</u>, 646 F.3d at 556. For the reasons set forth above, the Acting Commissioner's decision denying benefits is affirmed. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Acting Commissioner be **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of March, 2018.

---

disagreed with Dr. Nickerson's opinions that Plaintiff is limited in his ability to sit, stand, and walk and needed to lie down at unpredictable intervals.